UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **ENABLE MISSISSIPPI RIVER TRANSMISSION, LLC** | **CIVIL ACTION NO. 3:15-cv-1502** |
| **VERSUS** | **JUDGE:** |
| **NADEL & GUSSMAN, LLC** | **MAGISTRATE JUDGE:** |

**COMPLAINT**

ENABLE MISSISSIPPI RIVER TRANSMISSION, LLC, successor to Mississippi River Transmission Corporation ("MRT" or "Plaintiff"), respectfully petitions this Honorable Court as follows:

1.

Plaintiff is a Delaware limited liability company authorized to do and doing business in the State of Louisiana. The principal place of business of Plaintiff is located in Oklahoma City, Oklahoma County, Oklahoma.

2.

The Defendant in this case is:

> NADEL AND GUSSMAN, LLC ("Nadel"), an Oklahoma limited liability company, authorized to do and doing business in the State of Louisiana, with a principal place of business located in Tulsa, Oklahoma, which may be served with process through its Registered Agent for Service, Joseph G. Anderson, 3640 Highway 33 North, Ruston, LA 71270.

## JURISDICTION AND VENUE

3.

This Court has personal jurisdiction over Defendant because Defendant has an interest in and is exercising a real right in immovable property located in Lincoln Parish, Louisiana; Defendant is actually doing business in Louisiana; and this matter arises from Defendant's business activities in Louisiana.

4.

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337 because Plaintiff's claims involve the withdrawal of natural gas from a federally certificated underground storage reservoir, known as the West Unionville Storage Facility, owned and operated by Plaintiff pursuant to a Certificate of Public Convenience and Necessity issued by the Federal Energy Regulatory Commission ("FERC") pursuant to the general provisions the Natural Gas Act, 15 U.S.C. §§ 717 *et seq.* Plaintiff's rights in and to the West Unionville Storage Facility, its related facilities and the natural gas contained therein are derived exclusively from Federal Law pursuant to the Natural Gas Act. Moreover, Plaintiff's West Unionville Storage Facility and its related facilities are operated under, governed and regulated entirely by Federal Law, subject to the exclusive jurisdiction of the FERC. These claims affect substantial rights and obligations arising under Federal Law rendering subject matter jurisdiction proper in this case. Further, to the extent that the claims involve questions of state law, the Court has pendent jurisdiction over such claims as the issues related to rights and obligations arising under Federal Law predominate.

5.

Venue is proper in this District under the provisions of 15 U.S.C. § 717 because this is an action relative to Plaintiff's rights in natural gas stored in Lincoln Parish, Louisiana and such rights are derived from the Natural Gas Act and exercised pursuant to a Certificate of Public Convenience and Necessity issued by the FERC. Additionally, venue is proper in this District under the provisions of 28 U.S.C. § 1391 because the property and property interest(s) at issue in this lawsuit are situated in Lincoln Parish, Louisiana, and the events giving rise to this dispute have occurred in Lincoln Parish, Louisiana.

## BACKGROUND

6.

Plaintiff operates an underground gas storage field in Lincoln Parish, Louisiana, known as the West Unionville Gas Storage Facility, under the authority of the FERC pursuant to the Natural Gas Act, 15 U.S.C. §§ 717 *et seq*. and pursuant to corollary state regulation pursuant to lawfully entered orders of the State of Louisiana, Department of Conservation.

7.

The West Unionville Gas Storage Facility is operated pursuant to a Certificate of Public Convenience and Necessity issued by FERC on December 30, 1968, attached hereto as en globo *Exhibit 1* (the "Certificate"), which authorized the development and operation of the Vaughn Sand Cotton Valley Formation, West Unionville Field, Lincoln Parish, Louisiana as an underground natural gas storage reservoir, subject to the jurisdiction of FERC and requirements of the Natural Gas Act.

8.

FERC jurisdiction over the West Unionville Gas Storage Facility is expansive and covers the actual underground natural gas storage reservoir along with its appurtenant facilities, and the injected reservoir gas inventory that must be maintained to facilitate the storage field's operations (the "cushion gas").

9.

By virtue of the FERC Certificate and pursuant to the requirements of the Natural Gas Act, the West Unionville Gas Storage Facility, its appurtenant facilities, and cushion gas inventory are dedicated "to be used [solely] in the transportation and sale of natural gas in interstate commerce".

10.

Plaintiff's operation of the West Unionville Gas Storage Facility is also subject to state regulation, pursuant to Order No. 206-D, dated April 17, 1968, as thereafter modified by Order Nos. 206-D-1, 206-D-2 and 206-D-3, attached hereto as en globo *Exhibit 2* (collectively "Order No. 206-D"), issued by the State of Louisiana, Department of Conservation. That Order pronounces Plaintiff as the exclusive operator of the West Unionville Gas Storage Facility, defined as per the attached map to Order No. 206-D, in the Vaughn Sand Reservoir, West Unionville Field, in Lincoln Parish, Louisiana.

11.

Pursuant to Order No. 206-D, "all natural gas which previously had been reduced to possession and which subsequently is injected into the [West Unionville Gas] Storage Facility reservoir **shall at all times be deemed the property of applicant [Plaintiff],** its successors and assigns; **and in no event** shall such gas be subject to the right of the owner of the surface of the

lands, or of any mineral, mineral royalty, or mineral leasehold interest therein under which such underground storage reservoir lies or is adjacent to or of any person **other than the applicant [Plaintiff], its successors, or assigns, to produce, take, reduce to possession, waste or otherwise interfere with or exercise any control thereover.**" Order No. 206-D, *Exhibit 2* (Emphasis added).

12.

Generally Plaintiff has and continues to operate the West Unionville Gas Storage Facility, by injecting and storing natural gas ("storage gas") in the reservoir during the summer months, and withdrawing the storage gas via injection-withdrawal wells and shipping to other states via pipelines during the winter months when the need for natural gas increases in furtherance of its dedicated use.

13.

As evidenced by Order No. 206-D, the West Unionville Gas Storage Facility field reservoir was for many years believed to be a largely depleted "closed reservoir," effectively separated from the Vaughn Sand geological formation, and suitable for preserving storage gas for withdrawal by Plaintiff at a later date in conjunction with market demands.

14.

There is generally a certain amount of "non-effective" gas (i.e., volumes of gas injected into an underground storage reservoir but which for whatever reason cannot be thereafter be withdrawn by normal means) associated with the operation of underground natural gas storage reservoirs such as the West Unionville Storage Facility. Plaintiff must periodically audit and account for such "non-effective" gas, under governing rules and regulations of the FERC.

15.

Non-effective gas is a normal occurrence and is a well-accepted part of operating an underground natural gas storage reservoir. However, Plaintiff has experienced what it believes is an unusual amount of non-effective gas at the West Unionville Storage Facility. Plaintiff undertook a concerted effort to try to determine whether the non-effective gas amounts were attributable to accounting errors or some other intervening cause.

16.

Plaintiff analyzed geological and geophysical data from the West Unionville Gas Storage Facility and was unable to locate any possible cause, nor did its accounting effort yield any explanation for the non-effective gas amounts. Plaintiff suspected that some of its storage gas was migrating out of the defined limits of the West Unionville Gas Storage Facility through a subsurface passageway in the geologic formation, the Ruston Vaughn Sand.

17.

Therefore, through careful study and review of the geologic data available to Plaintiff, Plaintiff sited a possible location south and west of the West Unionville Gas Storage Facility and drilled and completed two investigation wells in the adjacent Ruston Vaughn Sand. The locations were chosen because Plaintiff believed that if its non-effective gas was indeed migrating through the Ruston Vaughn Sand beyond the limits of the defined storage reservoir, these wells would provide evidence of the presence of Plaintiff's gas.

18.

Plaintiff established that the Ruston Vaughn formation was present in subsurface geology where the wells were drilled, but that the Ruston Vaughn formation was not independently productive. Plaintiff monitored the investigation wells but at no time did the well data indicate

that Plaintiff's storage gas was migrating beyond the limits of the defined West Unionville Gas Storage Facility.  The two wells are the West Unionville-10 (Serial No. 154870) and the West Unionville-11 (Serial No. 157430).

19.

Nevertheless, Plaintiff continued to experience larger non-effective gas volume losses from the West Unionville Gas Storage Facility than what it thought was typical or to be expected for such underground natural gas storage reservoirs. Plaintiff engaged additional experts in the fields of geology and, through the use of scientific equipment, means and methods not previously used by or available to Plaintiff, developed a theory of the subsurface configuration of the Ruston Vaughn Sand.

20.

To evaluate its subsurface configuration theory, Plaintiff obtained historical production data for all of the wells drilled, completed and produced in the Ruston Vaughn Sand in the vicinity of the West Unionville Gas Storage Facility.  Plaintiff plotted over a period of time the volumes reportedly produced by the various wells and also the periods of injection and withdrawal of gas by Plaintiff into and from the West Unionville Gas Storage Facility.

21.

Although many of the wells completed in the Ruston Vaughn Sand many years ago have ceased to produce at all, many producing wells exhibited a pattern of production that, as reported to the State of Louisiana, Department of Conservation, showed an increase in gas production that correlated with periods when Plaintiff was injecting gas into the West Unionville Gas Storage Area and the pressure in the subsurface storage formation was increased (there was a slight temporal lag) and a corresponding decrease in reported production from the reviewed wells

during (lagging slightly after) Plaintiff's withdrawal of storage gas from the West Unionville Gas Storage Facility and the concomitant resulting decrease in the formation pressure.

22.

One well, the Sanderlin No. 1 Well, which went on-line as a producer from the Ruston Vaughn Sand in 2012, is believed by Plaintiff to be producing gas from Plaintiff's FERC Certificated West Unionville Gas Storage Facility. The production volumes reported to the State of Louisiana, Office of Conservation, for the Sanderlin No. 1 Well appear to correlate with Plaintiff's "non-effective" gas volume losses in the West Unionville Gas Storage Facility.

23.

Defendant Nadel owns and operates the Sanderlin No. 1 Well near the West Unionville Gas Storage Facility in the adjacent Vaughn Sand Reservoir, Ruston Field, Lincoln Parish, Louisiana, established pursuant to Order No. 164, dated April 6, 1949, and thereafter modified by Order Nos. 164-B, and 164-B-24, attached hereto as en globo *Exhibit 3* (collectively "Order No. 164"), issued by the State of Louisiana, Department of Conservation. A map depicting the locations of the West Unionville Gas Storage Facility, the Ruston Vaughn Production Area, and the Nadel Gussman Sanderlin #1 well is attached hereto as *Exhibit 4*. The information identifying the Sanderlin No. 1 well from the Louisiana Commissioner of Conservation is as follows:

| **Well Name** | **API Number** | **Section / Township / Range** | **Well Serial Number** | **Completion Interval** | **Well Status** |
|---|---|---|---|---|---|
| Sanderlin -1 | 17061-20888-0000 | 18 / 19N / 2W | SN 234840 | Vaughn | Active |

8

24.

Plaintiff believes and alleges upon information and belief that the composition of the gas produced from the Sanderlin No. 1 Well can be scientifically linked to and identified with Plaintiff's storage gas in the West Unionville Gas Storage Facility and that the composition of the Plaintiff's storage gas is different in scientifically significant ways from the native gas originally present in the Ruston Vaughn formation.

25.

Defendant denies that the Sanderlin No. 1 Well is producing Plaintiff's storage gas from the West Unionville Storage Facility, which makes this lawsuit a necessity.

26.

The Orders issued by the FERC and the State of Louisiana, Department of Conservation attached hereto as *Exhibits 1, 2 and 3* establish that as to one another, Plaintiff and Defendant share quasi-contractual, reciprocal rights in a common mineral reservoir.

27.

The Louisiana Mineral Code codified this principle, providing that parties with shared rights in a common reservoir have correlative rights and duties to one another in the development and use of the mineral rights of each owner.

28.

Defendant's production of Plaintiff's storage gas from the Ruston Vaughn Sand, specifically its operations relative to the Sanderlin Well No. 1 and production of Plaintiff's storage gas therefrom, have deprived Plaintiff of its reciprocal rights in and to its storage gas in the adjacent West Unionville Gas Storage Facility reservoir.

## DECLARATORY RELIEF AND ACCOUNTING

29.

Considering the foregoing, it is clear that there is a real and justiciable controversy between the parties regarding whether Defendant's actions in producing gas, which Plaintiff contends is its storage gas, from the Sanderlin No. 1 Well infringe on Plaintiff's enjoyment of its rights in and to the storage gas injected into the West Unionville Gas Storage Facility created by the FERC Certificate and Order No. 206-D.

30.

As such, Plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2201 requesting that this Court enter a judgment recognizing and affirming that the storage gas injected into the West Unionville Gas Storage Facility was and is at all times the property of Plaintiff pursuant to the FERC Certificate and Order No. 206-D.

31.

Plaintiff further requests that this Court enter a judgment declaring that Defendant's operations relative to the production of natural gas from the Sanderlin No. 1 Well have infringed on Plaintiff's enjoyment of rights in and to the storage gas injected into the West Unionville Storage Facility given to it by the FERC Certificate and Order No. 206-D.

32.

Plaintiff seeks an accounting from Defendant of the total volume of gas produced by Defendant from the Sanderlin No. 1 Well from the date of first production and the gross and net revenues received by Defendant from the sale of such natural gas from the Sanderlin No. 1 Well.

GENERAL AND EQUITABLE RELIEF

33.

Defendant's actions in producing the natural gas comprising Plaintiff's storage gas from the Sanderlin No. 1 Well have interfered with Plaintiff's ability to exercise the rights granted exclusively to it by the FERC and the State of Louisiana, Department of Conservation, in the West Unionville Storage Facility.

34.

Defendant's actions have resulted in inappropriate and unjust enhancement of Defendant's rights to Plaintiff's detriment. Defendant has derived monetary benefits, including but not limited to, profits from the sale of Plaintiff's West Unionville Storage Facility storage gas and Plaintiff has suffered a resulting impoverishment.

35.

Plaintiff therefore demands a judgment requiring Defendant, Nadel, to plug and abandon any and all gas wells owned and operated by Nadel, including the Sanderlin No. 1 Well, that are producing storage gas injected into the federally regulated West Unionville Storage Facility owned and operated by Plaintiff, and to compensate Plaintiff for any and all gains, profits or enhancements received by Defendant causally related thereto including but not limited to profits gained by selling the subject storage gas produced from Defendant's wells, including Defendant's Sanderlin No. 1 Well.  Plaintiff does not seek to plug and abandon any well that is not producing from the Ruston Vaughn sand but is producing from a zone other than the Ruston Vaughn sand, or which well, including the Sanderlin No. 1 Well, is capable of production from another sand or zone, as long as the Ruston Vaughn sand is suitably and permanently isolated therefrom so as to prevent production of Plaintiff's FERC Certificated storage gas.

36.

Plaintiff demands that this Court enter a judgment for all relief due to Plaintiff as a result of Defendant's' acts, including the benefits enjoyed by Defendant as a result of Defendant's Sanderlin No. 1 Well, in such amount as will be proven at trial.

37.

Plaintiff further demands that Defendant be cast in judgment for all costs of this action, including Plaintiff's attorney fees to the extent allowable by law.

WHEREFORE, Plaintiff prays that after due proceedings, judgment be rendered herein in favor of Plaintiff and against Defendant, as prayed for, and for full, general and equitable relief as allowed under law.

Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC

By: /s/ David R. Taggart
David R. Taggart
Louisiana Bar Roll No. 12626

Kimberly C. Delk
Louisiana Bar Roll No. 28018

401 Edwards Street, Suite 1000
Reception Ninth Floor
Shreveport, Louisiana 71101
Telephone: (318) 227-1131
Facsimile: (318) 227-1141

- Attorneys for Enable Mississippi River Transmission, LLC